UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE MEACHEM,

                      Movant,

- against -

UNITED STATES OF AMERICA,

                      Respondent.

**ORDER**

18 Civ. 5097 (PGG)

14 Cr. 726 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On June 8, 2020, this Court granted Tyrone Meachem's petition pursuant to 28 U.S.C. § 2255, concluding that his Section 924(c)(1)(A) conviction could not stand in light of United States v. Davis, 139 S. Ct. 2319 (2019). (June 8, 2020 Order (Dkt. No. 143) at 9)[1] The Government has moved for reconsideration in light of the Second Circuit's recent decision in United States v. Dussard, 967 F.3d 149 (2d Cir. 2020). (Dkt. No. 153)  This Court concludes that, under the analysis set forth in Dussard, Meachem's Section 924(c)(1)(A) conviction survives. Accordingly, the Government's motion for reconsideration will be granted, and on reconsideration (1) Meachem's petition will be denied; (2) his Section 924(c)(1)(A) conviction will be reinstated; and (3) the order scheduling his resentencing for October 2, 2020 will be vacated.

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system. Unless otherwise specified, all docket numbers reference Case No. 14 Cr. 726.

**BACKGROUND**

I.      **OFFENSE CONDUCT AND INDICTMENT**

In September 2014, a cooperating witness told the Drug Enforcement Agency ("DEA") about a man he knew as "Love" – later identified as Meachem's co-defendant, Nakai Lamar – who committed robberies, sold crack cocaine and marijuana, and had access to guns. (Cmplt. (Dkt. No. 1) ¶¶ 8, 10)  At the direction of the DEA, the cooperating witness called Lamar to discuss robbing a fictional drug dealer of a fictional drug shipment.  (Id. ¶ 9)  Lamar agreed to commit the robbery, and said that he had a minivan and firearms with which to commit the robbery.  (Id. ¶¶ 12-13)

On October 20, 2014, the cooperating witness met with Lamar, Meachem, and their co-defendant, Chago Haynes, to discuss the robbery.  (Id. ¶ 14)  Lamar had recruited Meachem and Haynes to commit the robbery.  The cooperating witness told the defendants that the purported target of the robbery would have 14 kilograms of cocaine and 4 kilograms of heroin.  (Id.)  Lamar, Meachem, Haynes and the cooperator discussed how they would conduct the robbery.  (Id.)

Surveillance agents observed Lamar enter a building in the Bronx and emerge with an FAO Schwarz bag, which he handed to Haynes.  Lamar instructed Haynes to put the bag into a Nissan Altima.  (Id.)  Lamar then got into another car with the cooperating witness, while Meachem and Haynes followed in the Nissan Altima, with the firearms.  (Id. ¶ 15)  The cars drove to a pre-arranged location, where Meachem and his co-defendants were surrounded by agents and placed under arrest.  (Id.)  Inside the FAO Schwarz bag, agents recovered a loaded .22 caliber handgun and a loaded .32 caliber handgun.  (Id.)  Meachem and Haynes were also found in possession of gloves, which Meachem later said the conspirators had planned to use to avoid

2

leaving fingerprints.  Meachem also admitted to agents that he knew he was in route to commit a robbery of cocaine.  (Id. ¶ 16)

On October 31, 2014, Meachem was charged with conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Indictment (Dkt. No. 9) Count One); with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (id. Count Two); and with using or carrying a firearm during and in relation to (1) a drug trafficking crime – the narcotics conspiracy charged in Count One – and (2) a crime of violence – the robbery conspiracy charged in Count Two – in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Id. Count Three)

## II.  GUILTY PLEA

On May 11, 2016, Meachem entered into a plea agreement with the Government, in which he agreed to plead guilty to Counts Two and Three of the Indictment.  The plea agreement describes Counts Two and Three as follows:

> Count Two charges the defendant with conspiracy to commit Hobbs Act robbery . . . .  Count Three charges the defendant with using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of (a) the drug trafficking crime charged in Count One of the Indictment, and (b) the crime of violence charged in Count Two of the Indictment. . . .

(Plea Agreement (Dkt. No. 153) at 9)

On May 27, 2016, Meachem pleaded guilty before Magistrate Judge Gabriel W. Gorenstein to Counts Two and Three.  Judge Gorenstein described the charges as follows:

> The charge in Count 2 is that you and others agreed to commit an armed robbery of individuals believed to be engaged in narcotics trafficking, and the charge in Count 3 is that, in relation to that charge, the robbery conspiracy, that you used or carried a firearm, or in furtherance of the crime possessed a firearm, or aided and abetted the use, carrying, or possession of a firearm.

(Plea Tr. (Dkt. No. 101) at 5)

In summarizing the elements of the Section 924(c) offense, the Government stated that

> [t]here are two elements of the crime charged in Count 3.  First, that the defendant committed a crime of violence or a drug trafficking crime for which he might be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count 1 and the Hobbs Act robbery conspiracy charged in Count 2; second, that the defendant knowingly used or carried a firearm during and in relation to the commission of or knowingly possessed a firearm in furtherance of that crime of violence or drug trafficking crime.

(Id. at 11-12)

Meachem then gave the following factual allocution in response to Judge Gorenstein's questions:

> THE COURT:  Mr. Meachem, can you tell me what it is you did that makes you guilty of these charges?
>
> THE DEFENDANT:  Myself, along with others, conspired to commit a robbery, and there were guns involved.
>
> THE COURT:  You were going to rob someone of drugs; is that right, sir?  Illegal drugs or something else?
>
> THE DEFENDANT:  Drugs.
>
> THE COURT:  Illegal drugs.
>
> THE DEFENDANT:  Mm-hmm.
>
> THE COURT:  I need a yes or no.
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You had an agreement with other people that you were going to do this?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Was the plan to either use violence or threaten violence?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Let me ask you about the gun.  Did someone have the gun, or did you have the gun?

4

>THE DEFENDANT:  No, I didn't have it.
>
>THE COURT:  Someone else had it?
>
>THE DEFENDANT:  That's what it says, yes.  Yes.
>
>THE COURT:  And did you know they had a gun?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  And that gun was to be used, if necessary, as part of the robbery?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  Where was this robbery?  Manhattan?
>
>THE DEFENDANT:  The Bronx.
>
>THE COURT:  And this was in 2014, sir?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  Anything else from the government?
>
>THE GOVERNMENT:  No.  Thank you, your Honor.

(Id. at 12-14)

This Court accepted Meachem's guilty plea on June 30, 2016.  (June 30, 2016 Order (Dkt. No. 104))

### III.  SENTENCING

Sentencing took place on November 30, 2016.  At that time, the Court made the following findings concerning the Sentencing Guidelines:  "as to Count Two . . . the offense level is 18, [the] criminal history category is IV, [and] the recommended sentencing range is 41 to 51 months' imprisonment.  Considered together with the mandatory 60-month consecutive sentence required under Count Three, the applicable guidelines range is 101 to 111 months' imprisonment."  (Sentencing Tr. (Dkt. No. 129) at 12)  This Court sentenced Meachem to time served on Count Two – about twenty-five months' imprisonment – and to sixty months'

5

imprisonment on Count Three, with those terms to run consecutively.  The Court stated that the "25 months [Meachem] has spent in [pretrial] detention constitute the time-served sentence that I intend to impose on Count Two, and the 25 months he has already served will not be credited to the sentence on Count Three."  (Id. at 22, 30)  According to the Bureau of Prisons' website, Meachem's projected release date is September 3, 2021.

## IV.  PROCEDURAL HISTORY

Meachem filed a Section 2255 petition on May 31, 2018.  (Pet. (Dkt. No. 1), 18 Civ. 5097)  In his petition, Meachem argues that he is entitled to "relief as to the violation of 18 U.S.C. § 924(c)(1)(A)" in light of Sessions v. Dimaya, 138 S. Ct. 1204 (2018).  Meachem argues that, "[b]ased on application of relevant conduct, and 18 U.S.C. § 16(b), [P]etitioner's foreseeability along with reasonableness fell below an objective standard to possess or have knowledge of any weapon(s) being present, during the commission or in relation to a crime."  (Id. at 1)  Meachem also contends that his lawyer provided ineffective assistance:  "counsel's determination without addressing each specific charge as to culpability has constituted a defect in integrity of a plea agreement with roles of relevant conduct, such as a minor role reduction. . . . Had counsel objected to the ground the petitioner is presumed innocent until facts prove him guilty of possession of a firearm in relation to a crime, there is no reasonable doubt of a different outcome in the[] sentencing guidelines determination and sentence."  (Id. at 2)

The Government filed a brief opposing the petition on August 20, 2018.  (Govt. Opp. Br. (Dkt. No. 134))  The Government argued that Meachem was not entitled to relief because (1) "[t]he Second Circuit has not decided whether Section 924(c)(3)(B) suffers the same vagueness problems at issue in . . . Dimaya"; and (2) "[t]he narcotics conspiracy charge in Count One was a sufficient and independent predicate for Meachem's guilty plea to and conviction for

the 18 U.S.C. 924(c) charge in Count Three," and accordingly "th[is] Court need not reach the question of whether a Hobbs Act conspiracy qualifies as a crime of violence under 18 U.S.C. § 924(c)."  (Id. at 13)

As to Meachem's ineffective assistance of counsel claim, the Government argues that "[i]n the Plea Agreement, Meachem waived his right to file a direct appeal or bring a collateral challenge pursuant to 28 U.S.C. § 2255. . . ."  (Id. at 16)  The Government further contends that any ineffective assistance claim is time-barred, because "[a]fter Meachem filed a timely Notice of Appeal, he moved to withdraw his Notice of Appeal on March [7], 2017, and that motion was granted on March 8, 2017.  Even allowing for one year after his Notice of Appeal was withdrawn, Meachem's deadline for filing the instant motion based on an ineffective assistance of counsel claim was March 8, 2018."  (Id. at 17)

As to the merits of Meachem's ineffective assistance claim, the Government argues that Meachem did not qualify for a two-level minor role reduction and, in any event, granting such a reduction would result in a Guidelines range of 93 to 101 months' imprisonment, and this Court's sentence of 85 months' imprisonment is below that range.  (Id. at 18)

On June 24, 2019, the Supreme Court issued its decision in United States v. Davis, holding that 18 U.S.C. § 924(c)(3)(B) – in which "crime of violence" is defined – is unconstitutionally vague.  United States v. Davis, 139 S. Ct. 2319, 2336 (2019).

In a July 11, 2019 letter, Meachem asserts that "due to the Supreme Court's recent ruling in Davis, the 60-months [sentence] as to the § 924(c) offense is invalid and can no longer continue to stand . . . [,] because conspiracy to commit Hobbs Act robbery is no longer considered . . . a violent crime."  (July 11, 2019 Pet. Ltr. (Dkt. No. 135) at 2)  In an April 6, 2020 letter, Meachem again notes the ruling in Davis and requests "that he be resentenced to an

7

advisory guidelines range of 41-51 months' imprisonment" for the Hobbs Act robbery conspiracy charge. (Apr. 6, 2020 Pet. Ltr. (Dkt. No. 137) at 2)

On June 8, 2020, this Court granted Meachem's petition in light of Davis. The Court's reasoning was as follows:

> Based on the plea transcript, it appears that the Government intended for both the narcotics conspiracy and the Hobbs Act robbery conspiracy to serve as predicate offenses for the Section 924(c) offense. (Plea Tr. (Dkt. No. 101) at 5, 14 Cr. 726) Given the facts set forth in the Complaint, it also appears likely that the conspirators intended to distribute the multi-kilogram quantities of cocaine and heroin they intended to steal from the fictional drug dealer. (Cmplt. (Dkt. No. 1))
>
> At the allocution, however, the Government did not ask Judge Gorenstein to elicit facts concerning a plan to distribute the kilogram quantities of drugs that the defendants planned to steal. While Meachem admitted that he and his co-conspirators intended to "rob someone of [illegal] drugs," he did not allocute to any agreement to distribute the narcotics that would be stolen. (Id. at 13) Accordingly, Meachem's Section 924(c) conviction cannot be salvaged on the basis that he admitted to both a drug trafficking crime predicate and a "crime of violence" predicate.
>
> Meachem's Section 924(c)(1)(A) conviction cannot stand in light of Davis. See United States v. Barrett, 937 F.3d 126, 127 (2d Cir. 2019) ("We are obliged to vacate [defendant's Section 924(c)] conviction because Davis precludes us from concluding, as we did in our original opinion, that [defendant's] Hobbs Act robbery conspiracy crime qualifies as a 924(c) crime of violence."). Accordingly, Meachem's Section 924(c) conviction will be vacated.

(June 8, 2020 Order (Dkt. No. 143) at 9-10)

On September 8, 2020, the Government moved for reconsideration in light of the Second Circuit's recent decision in United States v. Dussard, 967 F.3d 149 (2020). (Sept. 8, 2020 Govt. Ltr. (Dkt. No. 153))

## DISCUSSION

### I. LEGAL STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A.,

8

861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012).  "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)).  "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court."  Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).

"The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478).  Reconsideration is appropriate where an intervening decision from the Second Circuit has "called into question the validity of some substantive aspects of [a district court's order]."  Counts v. Portuondo, No. 97CIV.3305LTSDFE, 2003 WL 139278, at *1 (S.D.N.Y. Jan. 17, 2003); see also Liberty Mut. Ins. Co. v. Fairbanks Co., No. 13-CV-3755 (JGK), 2016 WL 4203543, at *1-*2 (S.D.N.Y. Aug. 8, 2016) (holding that "[a]n intervening change in the law require[d] reconsideration" after the New York Court of Appeals "answer[ed] a question certified to it" that "disposes of" an issue in that case).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'"  Id. (second alteration in original) (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota,

9

700 F. Supp. 169, 170 (S.D.N.Y. 1988))). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id.

## II.   ANALYSIS

The Government "seeks reconsideration of the Court's June 8 Order granting Meachem's motion to vacate his § 924(c) conviction in light of the Second Circuit's intervening and directly applicable decision in Dussard, and requests that this Court exercise its discretion to consider the merits of the arguments set forth below." (Sept. 8, 2020 Govt. Ltr. (Dkt. No. 153) at 5)

Dussard was issued on July 23, 2020, 45 days after this Court's June 8, 2020 Order. Dussard had pleaded guilty to Count One of the Indictment – conspiracy to commit Hobbs Act robbery, and to Count Three of the Indictment, which charged him with using and carrying a firearm (1) "during and in relation to a crime of violence . . . , namely, the "robbery conspiracy charged in Count One of this Indictment," and (2) "during and in relation to a drug trafficking crime . . . namely, the narcotics conspiracy charged in Count Two of this Indictment." Dussard, 967 F.3d at 152 (emphasis omitted). On appeal, Dussard argued that he "in fact [had] pleaded guilty to possession of a firearm in furtherance of a crime of violence," and accordingly his Section 924(c) conviction could not stand in light of Davis. Id. at 151.

Applying the "plain-error standard," the Second Circuit rejected Dussard's argument, finding that

> the evidence . . . provided an ample predicate for a conviction under § 924(c)(1)(A)(i) on the basis of firearm possession during and in relation to a drug trafficking crime. It included Dussard's sworn admission that he knowingly participated in a conspiracy "to steal narcotics at gun point from people we

> believed were drug dealers transporting narcotics" (Plea Tr. 13); and Dussard did not contest the PSR descriptions of meetings he attended with other coconspirators at which (a) it was discussed that the targeted drug dealers would be transporting 12 kilograms of cocaine--a quantity inconsistent with any notion that the coconspirators intended to steal the drugs for their own personal use--and (b) a coconspirator stated that he already had buyers lined up for the cocaine they would steal.
>
> Thus, if Dussard and the government had anticipated the Davis decision making the predication of Count Three on the Hobbs Act conspiracy invalid, they could have avoided the invalidity in Dussard's Count Three plea of guilty just by changing the two lines of the Agreement's Count Three description that referred to a crime of violence and Hobbs Act conspiracy, to have that description refer instead to the allegation of firearm possession "during and in relation to a drug trafficking crime . . . , namely, the narcotics conspiracy charged in Count Two of this Indictment. . . ."

Id. at 151, 155-58.

The circumstances of Dussard are very similar to the circumstances here. Dussard, like Meachem, was charged with using and carrying a firearm "during and in relation to a crime of violence . . . namely, the robbery conspiracy charged in Count One of this Indictment, and with using and carrying a firearm during and in relation to a drug trafficking crime." Dussard, 967 F.3d at 152.  Dussard, like Meachem, admitted in his plea allocution that he had conspired with others who possessed firearms to steal narcotics at gun point.  (Id. at 153; Plea Tr. (Dkt. No. 101) at 13) (Meachem allocuting that he "intended to rob someone of [illegal] drugs").

Dussard's presentence report – to which he did not object – stated that "the coconspirators discussed their understanding that the targeted drug dealer would be carrying some 12 kilograms of cocaine.  One of the coconspirators said he had lined up buyers for the cocaine."  Dussard, 967 F.3d at 153.  Similarly, Meachem's presentence report states that Meachem and his co-conspirators had discussed "where they would go after the robbery to split up" the fourteen kilograms of cocaine and four kilograms of heroin they intended to steal.  (PSR

11

(Dkt. No. 109) ¶¶ 22-23)  Meachem did not object to this portion of the presentence report at sentencing.  (Sentencing Tr. (Dkt. No. 129) at 3-10)

Finally, in Dussard, the defendant faced a mandatory minimum sentence of ten years' imprisonment for the drug trafficking conspiracy charged in Count Two under 21 U.S.C. § 814(b)(1)(A), and in Dussard's plea agreement the Government agreed to drop this charge. Dussard, 967 F.3d at 154.  Similarly, Meachem was charged in Count One with participating in a drug trafficking conspiracy in violation of 21 U.S.C. §§ 841(b)(1)(A), which exposed him to a ten-year mandatory minimum sentence.  (Indictment (Dkt. No. 9) Count One)  In Meachem's plea agreement, the Government agreed to drop this charge in exchange for Meachem's agreement to plead to Hobbs Act robbery conspiracy and to a Section 924(c)(1)(A) charge. (Plea Agreement (Dkt. No. 153) at 10)

Unlike in Dussard, however, Meachem's plea agreement explicitly provides that he is pleading guilty to "possessing a firearm in furtherance of (a) the drug trafficking crime charged in Count One of the Indictment, and (b) the crime of violence charged in Count Two of the Indictment. . . ."  Compare Plea Agreement (Dkt. No. 153) at 9 with Dussard, 967 F.3d at 152 (noting that Dussard's plea agreement states that "Count Three charges the defendant with using and carrying a firearm during and in relation to a crime of violence, to wit, the Hobbs Act robbery charged in Count One of the Indictment").

In rejecting Dussard's challenge to his Section 924(c)(1)(A) conviction – despite the fact that Dussard's plea agreement and guilty plea hearing make no reference to the charged drug trafficking conspiracy as a predicate for the Section 924(c) charge – the Second Circuit notes that

> Dussard was motivated – and the government was willing – to enter into a plea agreement that would allow him to plead guilty to a § 924(c)(1)(A)(i) offense,

> with its mandatory minimum consecutive five-year prison term, plus an offense that had no mandatory minimum prison term. Had he and the government anticipated the decision in Davis, this could easily have been accomplished – with no difference in the offense of conviction or in the punishment – by simply having the two lines of the Agreement describing Dussard's Count Three agreed-upon plea refer not to a crime of violence but refer instead to the drug trafficking crime that was also alleged as a § 924(c)(1)(A)(i) predicate in Count Three. Dussard has pointed to nothing in the record to indicate that he would not have agreed to that language. Indeed, it would have resulted in precisely the same judgment on Count Three that was in fact entered, mistakenly, which he has made no effort to correct.[2]

Dussard, 967 F.3d at 158.

In assessing whether the Davis-related "error affected Dussard's substantial rights," the Second Circuit considered whether Dussard had "show[n] that there is a reasonable probability that, but for the error, he would not have pleaded guilty." Id. at 156. The court concluded that Dussard had made no such showing because – given the record – he "would have had little genuine hope of being acquitted of the Count Two drug trafficking conspiracy after a trial." Id. at 157. Moreover, "nothing about his plea or the plea hearing itself provides any basis for an argument that he was willing to plead guilty to Count Three only if it was tied to the charge of Hobbs Act conspiracy and that he would not have pleaded guilty to Count Three if the Plea Agreement had referred instead to the drug trafficking predicate." Id. at 158. The Second Circuit therefore "conclude[d] that Dussard has not shown that the error in his conviction on Count Three, made plain by the decisions in Davis and Barrett invalidating the stated crime-of-violence predicate for that offense, affected his substantial rights." Id.

---

[2] While Dussard's judgment "correctly stated that Dussard was guilty of Hobbs Act conspiracy on Count One," "it erroneously stated that Dussard's conviction on Count Three was for '[p]ossession of firearm in furtherance of narcotics conspiracy.' . . . There was no motion to correct the judgment." Id. at 154.

Dussard presents "an intervening change in controlling law," Virgin Atl. Airways, 956 F.2d at 1255, that "call[s] into question the validity of some substantive aspects of [this Court's June 8, 2020 Order]." Counts, 2003 WL 139278, at *1. This Court's June 8, 2020 Order is premised on the fact that Meachem "did not allocute to any agreement to distribute the narcotics that would be stolen." (June 8, 2020 Order (Dkt. No. 143) at 9) Dussard makes clear that a guilty plea to a Section 924(c)(1)(A) charge premised on Hobbs Act robbery conspiracy may stand where the robbers intended to steal narcotics from the victim, even where the defendant did not allocute to all the elements of the charged narcotics conspiracy when he pleaded guilty to Hobbs Act robbery conspiracy and the Section 924(c)(1)(A) charge. Accordingly, the Government's motion for reconsideration will be granted.

As this Court summarized in its June 8, 2020 Order, Meachem argues that his "Section 924(c)(1)(A) conviction cannot stand in light of Davis, because the predicate offense is conspiracy to commit Hobbs Act robbery, which can no longer be considered a 'crime of violence.'" (Id. (citing July 11, 2019 Pet. Ltr. (Dkt. No. 135) at 2; Apr. 6, 2020 Pet. Ltr. (Dkt. No. 137) at 2))

On reconsideration, this Court again applies the standard for petitions brought under 28 U.S.C. § 2255, which requires the petitioner to show "actual prejudice." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). Meachem therefore has a higher burden here than Dussard did on direct appeal. See United States v. Frady, 456 U.S. 152, 166 (1982) ("[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."). And as the foregoing analysis demonstrates, the circumstances of Meachem's plea make it even less likely that he suffered prejudice than did Dussard. This Court concludes that Meachem's petition

14

should be denied in light of Dussard.  Given Meachem's allocution, his plea agreement, and the unchallenged factual account set forth in the presentence report, Meachem has not shown that the Davis-related error he cites caused him to suffer "actual prejudice."

## CONCLUSION

For the reasons stated above, the Government's motion for reconsideration is granted; this Court's June 8, 2020 Order is vacated to the extent that it grants Meachem relief based on United States v. Davis, 139 S. Ct. 2319 (2019); Meachem's petition under 28 U.S.C. § 2255 to vacate his Section 924(c)(1)(A) conviction (Pet. (Dkt. No. 1), 18 Civ. 5097) is denied; and Meachem's Section 924(c)(1)(A) conviction is reinstated.  The July 22, 2020 Order scheduling a resentencing for October 2, 2020 (Dkt. No. 148) is vacated.

The Government is directed to ensure that Meachem is served with a copy of this order forthwith.

Dated: New York, New York
       September 22, 2020

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge