UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

TYRONE MEACHEM,

Defendant.

**ORDER**

14 Cr. 726 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On May 27, 2016 Defendant Tyrone Meachem pled guilty to conspiracy to

commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count Two), and to using,

carrying, and possessing a firearm during and in relation to a crime of violence – the charged

Hobbs Act robbery conspiracy – in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three).[1]

(See Indictment (Dkt. No. 9) at 2, 3; Plea. Tr. (Dkt. No. 101) at 5; Judgment (Dkt. No. 126) at 1)

On November 30, 2016, this Court sentenced Meachem to time served on Count

Two – approximately 25 months – and to 60 months' imprisonment on Count Three, with those

terms to run consecutively, as mandated by statute. (Sentencing Tr. (Dkt. No. 129) at 22; see

also Judgment (Dkt. No. 126) at 2) Meachem is currently detained at the United States

Penitentiary-Lee, in Pennington Gap, Virginia ("USP-Lee"). His scheduled release date is

September 3, 2021. (Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161) at 3, 8)

On or about October 5, 2020, Meachem moved pro se for "compassionate release

under the COVID-19 Cares Act." Meachem's submission, in pertinent part, reads as follows:

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case
Files ("ECF") system.

I am writing you this letter because I am asking for compassionate release under the Covid-19 Cares Act.  Right now I am in quarantine[] at USP Lee county.  I have Covid-19 and also tested positive for Covid-19.  I have a release date less than a year.  I am asking you your Honor to be placed on home confinement.  We are not be[ing] treated and the conditions are extremely harsh Sir due to the Covid-19 pandemic.

(Oct. 5, 2020 Def. Ltr. (Dkt. No. 158) at 1)

In a November 5, 2020 letter, the Government opposes Meachem's request for compassionate release.  The Government contends that (1) Meachem has not exhausted his administrative remedies, as is required under 18 U.S.C. § 3582(c)(1)(A); (2) Meachem has not demonstrated extraordinary and compelling reasons that would warrant compassionate release; (3) the factors set forth in 18 U.S.C. § 3553(a) weigh heavily against compassionate release; and (4) to the extent that Meachem seeks release on home confinement, this Court lacks authority to grant that request under 18 U.S.C. § 3624(c).  (Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161) at 1)

For the reasons stated below, Meachem's request for compassionate release will be denied.

## I.    LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A) – provides that a court may:

upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

18 U.S.C. § 3582(c)(1)(A).

2

Pursuant to this statute, an inmate seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility[.]"  Id. § 3582(c)(1)(A).

A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a); determine whether there are "extraordinary and compelling reasons [that] warrant such a reduction"; and consider whether a sentencing "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Id.

## II.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

By its terms, the compassionate release statute – 18 U.S.C. § 3582(c)(1)(A) – provides that before an inmate moves before the sentencing court for compassionate release, he must have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf[,] or . . . 30 days [must have passed] from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  Id. § 3582(c)(1)(A).

Here, there is no evidence that Meachem ever requested compassionate release from the warden of USP-Lee.  In his letter, Meachem does not claim that he ever communicated with the warden about compassionate release.  (Oct. 5, 2020 Def. Ltr. (Dkt. No. 158) at 1)

The Government contends that Meachem has not exhausted his administrative remedies.  (See Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161) at 8 ("The BOP has informed the Government that Meachem has not asked the BOP for compassionate release or a reduction in his sentence."); id. at 8 n.7 ("Nor has Meachem asked to be considered for early home

3

confinement under the CARES Act."))  The Government further argues that "Section

3582(c)(1)(A)'s exhaustion requirement is . . . mandatory."  (Id. at 6 (citing United States v.

Ogarro, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020)); see also

United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (finding that an inmate's failure to

exhaust his administrative remedies is a "glaring roadblock" to granting relief under Section

3582(c)(1)(A)); United States v. Alam, 960 F.3d 831, 835 (6th Cir. 2020) (same))

  Even assuming that this Court could excuse Meachem's failure to exhaust his

administrative remedies, his request for compassionate relief fails on the merits, for the reasons

discussed below.

  **B.**  **Section 3553(a) Factors**

  Title 18, U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and characteristics
 of the defendant;

(2) the need for the sentence imposed—

  (A) to reflect the seriousness of the offense, to promote respect for the
  law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational
  training, medical care, or other correctional treatment in the most effective
  manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for—

  (A) the applicable category of offense committed by the applicable
  category of defendant as set forth in the guidelines . . .

(5)  any pertinent policy statement—

> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At sentencing, this Court carefully considered the Section 3553(a) factors. (Sentencing Tr. (Dkt. No. 129) at 15)  With respect to the nature and circumstances of the offense, this Court found

> the conduct in this case was extremely serious and presented enormous risk of harm.  Mr. Meachem agreed to commit an armed robbery of a purported drug dealer, and he transported guns given to him by his codefendant to the place where the robbery was supposed to occur.  He came to the site of the planned robbery equipped to commit it with loaded firearms and gloves.  It's quite possible that someone could have gotten killed if in fact this had been a real drug dealer and a real drug shipment, and it's possible that the victim, one of the defendants, or an innocent bystander could have wound up injured in the event this had been a real event.

(Id. at 21)

As to Meachem's personal history and characteristics, this Court, noted, inter alia, his "serious and lengthy [criminal] record, which involves acts of violence":

> In 1997, at age 16, [Meachem] was convicted of grand larceny as well as armed robbery.  The robbery involved the theft of $200 from the victim at gunpoint.  He received a sentence of a year on the grand larceny and three to six years on the robbery.  He was paroled after two years on the robbery conviction, violated parole, was paroled again about a year or so later, and violated again.  He also has a 2002 conviction for criminal possession of a controlled substance, which was cocaine.  He received a sentence of two to four years' imprisonment, and he also has a 2010 conviction for assault in the third degree. . . .

(Id. at 18)  The Court also noted that on October 16, 2014 – four days before Meachem

was arrested on the instant offense – he was charged in New York State court with

attempted assault in the third degree and attempted criminal obstruction of breathing or

blood circulation.  (Id. at 3-6)  Although Meachem disputed certain details of the alleged

assault – in which the alleged victim was his girlfriend – he did not dispute that during an

altercation with his girlfriend he had struck her.  (Id. at 5)

       This Court also noted that Meachem had had a difficult upbringing, with a

crack-addicted mother and a physically abusive father.  (Id. at 17)  Despite these

challenges, Meachem had an "impressive work history," was in "a long-term

relationship," and was raising two children with his partner.  (Id.)

       As to the Guidelines range, this Court concluded that "on Count Two,

offense level 18 at criminal history category IV correlates to a guidelines range of 41 to

51 months' imprisonment."  (Id. at 11)  As to Count Three, the Court concluded that "a

mandatory consecutive term of imprisonment of 60 months" applied.  (Id. at 11-12)

Accordingly, Meachem's "effective [G]uidelines range . . . [was] 101 to 111 months'

imprisonment."  (Id. at 12)

       This Court went on to sentence Meachem to time-served on Count Two –

approximately 25 months – and to 60 months' imprisonment on Count Three, with those

sentences to run consecutively.  (Id. at 22)  In imposing an effective sentence of 85 months'

imprisonment, this Court granted a variance from the Guidelines range of 101 to 111 months'

imprisonment.  (Id. at 12)

       In connection with Meachem's compassionate release motion, the Government

contends that, while "serving his sentence," he

and a co-conspirator allegedly distributed buprenorphine, a Schedule III controlled substance that is sold under the brand name Subutex and is an opioid used to treat opioid addiction.  On December 12, 2019, Meachem was charged, in the Middle District of Pennsylvania, with (i) conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, and (ii) distribution of a controlled substance, in violation of 21 U.S.C. § 841(a) (the "MDPA Case").  Ex. A (Indictment, United States v. Meachem, et al., No. 19 Cr. 365 (MWB) (M.D. Pa.)).  Meachem, who was ordered detained in the MDPA case (since he was already serving his sentence in this case), is scheduled to proceed to trial on February 1, 2021.  United States v. Meachem, et al., No. 19 Cr. 365 (MWB) (M.D. Pa.), Dkt. 18, 33.

(Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161) at 3)

Analysis of the Section 3553(a) factors counsels against granting Meachem's request for compassionate release.  As discussed at sentencing, Meachem has a long record of serious criminal activity, much of which involved violence.  He has done poorly under court supervision, and he presents a significant risk of recidivism.

### C.    <u>Extraordinary and Compelling Reasons</u>

In order to prevail on his compassionate release motion, Meachem must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence, and that any reduction that is granted comports with "applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with providing guidance to courts regarding the application of the compassionate release statute.  <u>See</u> 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); United States v. Ebbers, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020); <u>see also</u> United States v. Hernandez, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020).

7

The Commission's policy statement and commentary concerning Section 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  A defendant seeking compassionate release must demonstrate that his release will not present a danger to the community.  Id. § 1B1.13(2).

Here, Meachem – who is 39 years old (see Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161) at 9) – states that he has "tested positive for COVID-19," and that he is "not be[ing] treated and [that] the conditions are extremely harsh."  (Oct. 5, 2020 Def. Ltr. (Dkt. No. 158) at 1)  Having obtained Meachem's medical records from the Bureau of Prisons, the Government states that "[h]is symptoms included head and body aches, and a non-productive cough which resolved, and he was symptom-free and scheduled to be released back into the general population on October 8, 2020 (three days after the October 5 date on his letter to the Court)."  (Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161) at 9 (quotation marks omitted); see also id., Exh. B (Meachem medical records)) Meachem makes no mention of any underlying conditions in his letter.  (See Oct. 5, 2020 Def. Ltr. (Dkt. No. 158) at 1)

There is no question that COVID-19 presents an enormous risk to inmates. See United States v. Stephens, 447 F. Supp. 3d 63, 65 (citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12-19 (E.D.N.Y. Mar. 12, 2020)).  However, there is no evidence that Meachem suffers from underlying medical conditions that give him a poorer prognosis than others who have been infected with the COVID-19 virus, and his prison medical records show that he is now symptom free.  (Nov. 5, 2020 Govt. Ltr. (Dkt. No. 161), Ex. B)

In any event, the risk that the virus presents to Meachem must be balanced against the danger he presents to the community.

This Court concludes that Meachem has not presented "extraordinary and compelling reasons" warranting compassionate release.

## **<u>CONCLUSION</u>**

Defendant Meachem's application for compassionate release is denied.  A copy of this decision will be mailed by Chambers to Meachem.

Dated: New York, New York
November 11, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

9